IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | |
| TRAVELERS INDEMNITY COMPANY OF ILLINOIS, | Case No. 2:12–cv–00224–EJF |
| Defendant. | Magistrate Judge Evelyn J. Furse |

The parties in this case filed cross motions for summary judgment.[1] (ECF Nos. 22, 24.) Defendant removed this action, originally filed by Plaintiff in the Third Judicial District Court, Salt Lake County, Utah, to this Court pursuant to 28 U.S.C. sections 1441, 1446. Plaintiff Utah Property & Casualty Insurance Guaranty Association ("UPC") alleges it has a legal right to reimbursement from Travelers Indemnity Company of Illinois ("Travelers") because of an insurance policy Travelers issued to Valley Asphalt, Inc. ("Valley"). The parties have stipulated to the facts and seek a decision on the meaning of the insurance contract. Both UPC and Travelers ask this Court to grant summary judgment in its favor contending no genuine dispute as to any material fact exists, and therefore, the Court should grant summary judgment in its favor as a matter of law.

---

[1] On April 19, 2012, in accordance with 28 U.S.C. sections 636(c)(1) and (3) and Federal Rule of Civil Procedure 73, the parties consented to proceed before Magistrate Judge Paul M. Warner. (*See* ECF No. 9.) On May 21, 2012, this case was reassigned to the undersigned Magistrate Judge. (*See* ECF No. 12.)

1

Having carefully reviewed the parties' memoranda,[2] the Court concludes, that Plaintiff's Cause of Action for Reimbursement for Statutory Obligation Paid fails as a matter of law. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

The parties stipulate to the following facts for purposes of their respective summary judgment motions. (*See* ECF No. 24, Ex. 1.) On or about November 3, 1998, Jordan Landing, LLC ("Jordan") entered into a contract with Howa Construction, Inc. ("Howa") for construction at the Jordan Landing Development (the "Development") in West Jordan, Utah. Howa obtained a commercial general liability policy, Policy No. PP1140654, with a policy period of August 1, 1998, through January 1, 2000, from Reliance Insurance Company ("Reliance"). On October 31, 2001, the Commonwealth Court of Pennsylvania ordered Reliance into liquidation (the "Liquidation Order").

On or about November 17, 1998, Howa entered into an agreement with Valley to provide grading and paving services for Howa at the Development. The contract between Howa and Valley required Valley to list Howa as an additional insured on insurance policies obtained by Valley. Valley obtained commercial general liability insurance through Travelers in the form of Policy No. Y660999K2993TIL98, with a policy period of August 1, 1998, through August 1, 1999, and subsequently in the form of Policy No. Y660999K4439TIL99, with a policy period of August 1, 1999, through August 1, 2000 (the "Policy"[3]). Travelers also issued Certificates of

---

[2] The Court determined it can decide the Motion based on the briefing and does not need oral argument. *See* DUCivR 7–1(f).

[3] Because the policies are identical, the Court refers simply to the "Policy."

Liability (the "Certificates") listing Howa as "Certificate Holder" and "Additional Insured" on the Policy. (*See* ECF No. 22, Ex. 2.)

By 1999 or January of 2000, Valley completed paving work on a road at the Development, Jordan Landing Boulevard (the "Boulevard"). After Valley completed paving work, the Boulevard opened to traffic and began exhibiting "pavement distress" in the form of cracking, waviness, and rutting. West Jordan City refused to accept the road work, and Jordan ultimately repaired or replaced significant portions of Valley's work. Alleged defects also existed in the Development's storm drains and sewer lines, but those defects allegedly resulted from work performed by a separate subcontractor.

On November 23, 2005, Jordan filed suit against Howa in the Third Judicial District Court of the State of Utah (the "State Court"), case no. 050920850, for breach of contract arising out of the allegedly defective work Valley performed. The State Court eventually dismissed the case for failure to prosecute on May 31, 2007. On May 29, 2008, Jordan re-filed suit against Howa in State Court, case no. 080908843 (the "State Action"), under the same theories raised in the previous State Court case. Because of the Liquidation Order UPC recognized it had obligations to Howa under the Guaranty Associations Act (the "Guaranty Act"), *see* Utah Code Ann. § 31A–28–207, et seq., and became involved in the State Action in order to perform those obligations.

On March 17, 2009, the parties stipulated to an order staying the State Action pending arbitration. On March 2, 2010, Howa tendered the defense of the arbitration proceedings to Travelers pursuant to the Policy and Certificates listing Howa as Additional Insured. Travelers denied the tender in a letter dated May 14, 2010. UPC sent a letter to Travelers on August 4, 2010, that referenced the Guaranty Act and encouraged Travelers to attend mediation on August

6, 2010.  The mediation resulted in Howa and Jordan settling the case for $380,000, which led the State Court to dismiss the State Action against Howa on August 24, 2010.  Pursuant to the Guaranty Act, UPC contributed $300,000 toward the settlement, and Howa paid the remaining $80,000.

On August 30, 2010, UPC sent a letter to Travelers demanding it indemnify UPC for its loss, pursuant to Howa's purported status as an additional insured under the Policy.  Travelers again denied UPC's demand for coverage in a letter dated October 25, 2010.  On November 22, 2011, UPC filed the instant action before this Court seeking reimbursement for the $300,000 it contributed to the settlement between Howa and Jordan.

## STANDARD OF REVIEW

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  Because the parties stipulated to the facts in this case, they and the Court agree the Court can decide the case as a matter of law.

## DISCUSSION

UPC argues Travelers Insurance has the obligation to cover the loss attributed to Valley's defective work because the Policy lists Howa as a certificate holder and additional insured and because the Policy covers subcontractor work performed on Howa's behalf.  Conversely, Travelers argues the Court should dismiss UPC's claims because the Policy does not cover Valley's work, despite Howa being a certificate holder and additional insured on the Policy.

"In this diversity case, the substantive law of the forum state, [Utah], governs [the Court's] analysis of the underlying claims." *Kansas Penn Gaming, LLC v. HV Props.*, 662 F.3d 1275, 1284 (10th Cir. 2011). Utah law interprets insurance policies according to "general rules of contract construction." *S.W. Energy Corp. v. Continental Ins. Co.*, 1999 UT 23, ¶ 12, 974 P.2d 1239, 1242. Therefore, a court looks "to the language of the [policy] to determine its meaning and the intent of the contracting parties," *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235, 1240, and "afford[s] the policy terms their usually accepted meanings and giv[es] effect to and harmoniz[es] to the extent possible all policy provisions." *S.W. Energy Corp.*, 1999 UT 23 at ¶ 12, 974 P.2d at 1242 (citing *Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992)). When the Court finds an insurance policy ambiguous, a presumption of coverage in favor of the insured exists. *Id*. "An ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139, 1145 (quotation omitted). However, if the Court does not find an insurance contract ambiguous "the policy language is construed pursuant to its ordinary meaning." *S.W. Energy Corp.*, 1999 UT 23 at ¶ 13, 974 P.2d at 1242 (citing *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)).

The Court finds the Policy unambiguous. The Policy's terms do not contain "uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank*, 2002 UT 88 at ¶ 20, 54 P.3d at 1145. Therefore, the Court will construe the policy language according to its ordinary and usually accepted meaning.

Generally, the Policy covers "property damage"[4] "caused by an 'occurrence'[5] that takes place in the 'coverage territory'"[6] during the policy period.  (Commercial General Liability Coverage Form ("CGL") 1, ECF No. 24, Ex. 3 (hereinafter "CGL __").)  But fourteen exclusions exist in the Policy that specifically exclude certain situations involving property damage.  (*See* CGL § I(A)(2).)  The exclusion central to the disposition of this case, section I(A)(2)(*l*) ("Exclusion L"), excludes from coverage "'[p]roperty damage' to 'your work'[7] arising out of it or any part of it and included in the 'products-completed operations hazard'"[8] *unless* "the damaged work or the work out of which the damage arises was *performed on your behalf by a subcontractor*."  (CGL § I(A)(2)(*l*).) (emphasis added).  UPC relies on this policy term to argue the Policy covers Valley's defective work because Valley worked as a subcontractor for Howa.  However, UPC contends, the scope of Exclusion L does not include the situation presented by the facts of this case, and therefore Travelers has no obligation to reimburse UPC.

---

[4] "'Property damage' means: a. [p]hysical injury to tangible property, including all resulting loss of use to the property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. [l]oss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."  (CGL § IV(15).)

[5] "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (CGL § IV(12).)

[6] The Development's location falls within the "coverage territory" as defined by the Policy.  (*See* CGL § IV(4).)

[7] "'Your work' means: a. [w]ork or operations performed by you or on your behalf; and b. [m]aterials, parts or equipment furnished in connection with such work or operations.  'Your work' includes: a. [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and b. [t]he providing of or failure to provide warnings or instructions."  (CGL § IV(19).)

[8] "'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' . . . . Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."  (CGL § IV(14)(a).)

UPC argues that *Great American Ins. Co. v. Woodside Homes Corp.*, 448 F. Supp. 2d 1275 (D. Utah 2006), requires Travelers to reimburse UPC for the defective work of Valley, Howa's subcontractor. *Woodside* has facts similar to this case in that a third party sued Woodside Homes Corporation ("Woodside Homes"), a general contractor, because of defective work performed by subcontractors for Woodside Homes. *Id*. at 1276. The Court in *Woodside* considered defective work performed by a subcontractor an "occurrence," *id.* at 1282, and therefore certain claims arising from a subcontractor's faulty work "could trigger coverage" under a policy term identical to Exclusion L.[9] *Id*. at 1287. However, two key factors distinguish this case from *Woodside* and suggest coverage does not extend to work performed by Valley.

First, the subcontractor whose faulty work caused the case in *Woodside* was a third party, not a named insured or additional insured on the insurance policy at issue. In contrast, here the subcontractor, Valley, is the named insured on the Policy not a third party. Second, the named insured on the insurance policy at issue in *Woodside* was the general contractor, whereas in this case the general contractor, Howa, was only an additional insured on the Policy. Due to these important distinctions, *Woodside* does not control the outcome of this case. These differences cause the Court to find Travelers does not have to reimburse UPC for its share of the settlement with Jordan. Further, the scope of coverage under Exclusion L has a dispositive effect on the parties' cross motions for summary judgment. Accordingly, the Court need not address the parties' other arguments.

---

[9] The policies in both this case and *Woodside* derive from standard forms created and copyrighted by the Insurance Services Office, Inc. *See Woodside*, 448 F. Supp. 2d at 1279. Although whether the policy in *Woodside* is the same form policy used in this case remains unclear, the relevant policy term is identical. *See id.* at 1282.

## I.     The Policy does not cover defective work performed by Valley

The parties intended the Policy to protect the named insured and additional insureds from certain claims made by third parties regarding property damage.  No evidence suggests they intended the Policy to cover property damage resulting from a named or additional insured's own faulty work.  Indeed the plain language of the Policy suggests otherwise.  Reading the Policy's terms as a whole, the Policy specifically excludes the defective work of Valley, the named insured.  Reading the Policy differently would fail to give meaningful effect to other policy terms.

If the Court adopted UPC's interpretation of Exception L, several other policy terms would have no meaning and unnecessary ambiguities would arise.  For example, the Policy does not cover "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  (CGL § I(A)(j)(6).)  Further, the Policy excludes from coverage claims related to "property that has not been physically injured arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' . . . ."  (*Id*.)  The Policy does not cover "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . '[y]our work' . . . ."  (*Id*.)  These policy terms clearly exclude from coverage any defective work performed by Valley.  Because the Court interprets the Policy "as a whole and to the circumstances, nature, and purpose of the contract," *Peirce v. Peirce*, 2000 UT 7, ¶ 19, 994 P.2d 193, 198 (citation omitted), it cannot ignore the plain meaning of these policy terms.  When read together with Exception L, these policy terms make clear the Policy does not cover Valley's defective work.

UPC also cites *Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co.*, 2001 UT App 190, 27 P.3d 594, in support of its position that the Policy covers Valley's work as a subcontractor.  The *Meadow Valley* court found a subcontractor's insurance policy required indemnification of the general contractor, Meadow Valley Contractors ("Meadow Valley"), because it listed Meadow Valley as an additional insured and a nexus existed between the subcontractor's work and the damage to third parties from which the claim against Meadow Valley arose.  *Id*. at ¶¶ 11–15, 27 P.3d at 596–98.  *Meadow Valley* differs from the case before this Court because the agreement between Meadow Valley and its subcontractor provided that the endorsement naming Meadow Valley as an additional insured would "extend[] insurance coverage to Meadow Valley with respect to 'liability arising out of [the subcontractor's] work.'"  *Id*. at ¶ 6, 27 P.3d at 596.  Further, the *Meadow Valley* court found the damage suffered by the third parties fell within the meaning of "arising out of."  *Id*. at ¶¶ 11–15, at 597–98.

Here, the Subcontract Agreement between Howa and Valley contains no such provision.  (*See* Subcontract Agreement ("SA"), ECF No. 22, Ex. 1 (hereinafter "SA __").)  The Subcontract Agreement only requires Valley to obtain satisfactory liability insurance, provide insurance certificates to Howa, provide thirty day written notice before changing the liability insurance, and to name Howa as an additional insured.  (*See* SA 5, ¶ 27.)  Therefore, the Subcontract Agreement does not modify the unambiguous language of the Policy excluding Valley's work from coverage.

9

## II. The Policy does not provide Howa more extensive coverage than it provides Valley

UPC argues because Howa is an additional insured it has the same rights under the Policy that Valley has as the named insured.[10]  According to UPC, because the Policy would cover defective work of a subcontractor working on behalf of Valley, it follows that the Policy would also cover a claim arising from Valley's own defective work on the Boulevard because Valley acted as Howa's subcontractor.  However, as the named insured Valley has no right to recover for its own defective work.  Therefore, even if the Court accepted UPC's argument that additional insureds have the same rights as named insureds, the Court would have to go beyond the plain language of the several exclusions, including Exclusion L, to find that the Policy covers Valley's defective work.  The Court rejects that interpretation of the Policy because it would "result[ from] a forced or strained construction." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17, 133 P.3d 428, 433 (quotation omitted).

The Policy's exclusions clearly prohibit coverage of Valley's defective work, whether or not Valley also acted as a subcontractor for an additional insured.  Further, no terms in the Subcontract Agreement or the Blanket Additional Insured Endorsement modified the Policy to require that coverage should extend to Valley's defective work when Valley, the named insured, plainly does not have such coverage available to it.  (*See* SA 5, ¶¶ 27–28; CGL, Blanket

---

[10] Courts disagree whether additional insureds have the same rights as named insureds under policy language similar to that of this case.  UPC cites cases in support of its argument that additional insureds have the same rights as named insureds, *see Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1242 (10th Cir. 2001) (applying Wyoming law); *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714–15 (N.Y. Ct. App. 2007) (applying New York law), while Travelers cites cases that found additional insureds do not fit within the terms "you" and "your" referring to named insureds, *see Wright-Ryan Construction, Inc. v. AIG Ins. Co.*, 647 F.3d 411, 415–17 (1st Cir. 2011) (applying Maine law); *Alexander v. Nat'l Fire Ins.*, 454 F.3d 214, 226–27 (3rd Cir. 2006) (applying New Jersey law).  None of these cases presents the exact situation present in this case.

Additional Insured—Owners Lessees or Contractors.)  Thus, under the Policy, Travelers has no obligation to reimburse UPC, and "it is not within th[e] court's purview to bind [Travelers] to more."  *Saleh*, 2009 UT 20 at ¶ 22, 133 P.3d at 434.

## **CONCLUSION**

Because the Policy issued to Valley does not cover claims arising from Valley's defective work, Travelers has no duty to reimburse UPC for the amount it had a statutory obligation to pay on Howa's behalf towards a settlement with Jordan.  For the reasons stated, the Court DENIES Plaintiff's Motion for Summary Judgment and HEREBY GRANTS Defendant's Motion for Summary Judgment.

SO ORDERED.

DATED this 23rd day of August, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge